IN THE UNITED STATES DISTRICT
COURT WESTERN DISTRICT OF
MISSOURI WESTERN DIVISION

| | | |
|---|---|---|
| **Saili Prado** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| **Jackson County, Missouri,** | ) | |
| And | ) | **JURY TRIAL DEMANDED** |
| **John Doe I and John Doe II** | ) | |
| | ) | |
| Defendants. | ) | |

# COMPLAINT

### *Introduction*

1. Plaintiff, Saili Prado, seeks judgment against Defendants John Doe I and John Doe II for violation of his rights under the Eighth Amendment and Fourteenth Amendment to the Constitution of the United States; violation of his rights under the Missouri Constitution; and intentional infliction of emotional distress. Plaintiff also seeks judgment against Defendant Jackson County, Missouri, for failure to train and supervise correctional officers, including Defendants John Doe I and John Doe II.

### *Jurisdiction and Venue*

2. This action arises under the Constitution of the United States, the provisions of 42 U.S.C. § 1983, the Missouri Constitution, and Missouri law.

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a).

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

1

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and L.R. 3.1(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in Jackson County, Missouri.

*Parties*

6. Plaintiff, Saili Prado, is a resident of the State of Missouri. At all times relevant herein, he was a pretrial detainee in the Jackson County Detention Center ("JCDC"), a jail located in Jackson County, Missouri.

7. Defendant Jackson County, Missouri, is a political subdivision of the State of Missouri and operates the JCDC.

8. Defendant John Doe I, whose name is unknown to Plaintiff, was an employee of Defendant Jackson County at all times relevant to this complaint. He is sued in his individual capacity only.

9. Defendant John Doe II, whose name is unknown to Plaintiff, was an employee of Defendant Jackson County at all times relevant to this complaint. He is sued in his individual capacity only.

10. Defendants acted under color of state law at all times relevant to this complaint.

*Facts*

11. Plaintiff was arrested on February 2, 2016 by the Independence, Missouri police department.

12. Plaintiff was committed to JCDC on or about February 3, 2016, at which point he received a medical screening. It was his first time in a detention facility. In his receiving medical screening, Plaintiff identified that he was concerned he might be physically or sexually abused or assaulted by someone during his confinement.

13. During his incarceration at JCDC pending trial, Plaintiff was moved from housing unit to housing unit.

14. Plaintiff was initially placed in a temporary bunk on the third floor in the "Day Space" of 3F module for approximately two weeks. The third floor of the JCDC is referred to as the "Thunder Dome" because of the amount of fights that occur there. While in 3F module, on approximately February 9 or 10, 2016, other pretrial detainees (led by the brother of a co-defendant charged in connection with the crimes Plaintiff was arrested for) attempted to "jump" Plaintiff in the Day Space, but Plaintiff was warned by another pretrial detainee. Plaintiff notified his caseworker Ms. John of the plans and was able to avoid being assaulted.

15. Plaintiff was then transferred to 4G module on approximately February 18, 2016.

16. Plaintiff was then transferred to 4E module on or about March 4, 2016. Plaintiff asked his case worker why he was transferred but she stated that it was none of his business. Plaintiff advised Ms. John that he had enemies in 4E – people with ties to the same group of people who set out to jump him in 3F module.

17. In response to his statements, Plaintiff was transferred to "lock down" in "the hole" in 7B module for his own protection for approximately a month, whereby Plaintiff was required to be twenty-three hours in a cell with only one hour out of the cell.

18. Plaintiff was then transferred to 7D module for approximately a week to two weeks.

19. On April 7, 2016, Plaintiff was moved to J4A module. Plaintiff objected to the move because he did not want to look like a "snitch" and he felt that being placed in that module would make him look like a snitch.

20. During the morning hours of April 19, 2016, while in J4A module, unknown pretrial detainees also assigned to J4A module conspired to have a pretrial detainee place a

3

broom over the camera monitoring the J4A module so that the corrections officers monitoring the module would not see what was to transpire. The broom covered the camera from 7:07 a.m. through 7:09 a.m.. During this time, other pretrial detainees covered their faces with towels, commonly referring to themselves as the "towelaban," and assaulted and battered Plaintiff. Three pretrial detainees entered Plaintiff's cell, hit him and stomped on him, then pulled him from the cell and dragged him down the stairs while beating him. This brutal assault continued for approximately two minutes.

21. The corrections officers, specifically John Doe I and John Doe II, were to have constantly viewed the camera monitors for the camera footage in order to ensure the safety of the pretrial detainees. Had they done so, they would have seen the broom covering the camera and responded to the module.

22. John Doe I and John Doe II, either recklessly or intentionally, failed to view the camera monitors to see that a broom was covering the camera lens and, in so doing, were not alerted to the fact that there was a possible assault and battery on Plaintiff.

23. Alternatively, John Doe I and John Doe II viewed the camera footage, saw the broom being used to cover the camera lens, and intentionally failed to respond to the module to prevent the assault and battery on Plaintiff.

24. Because the camera lens was covered with a broom, the other pretrial detainees believed they could assault and batter Plaintiff without fear of punishment.

25. Later in the evening of April 19, 2016, the same three pretrial detainees assaulted Plaintiff in the dayroom while, once again, a pretrial detainee covered the camera with a broom so that corrections officers could not see what was happening and the cameras could not record what was happening. The camera was covered from 10:08 p.m. though 10:09 p.m. This brutal assault continued for approximately one minute to two minutes.

26. The corrections officers, specifically John Doe I and John Doe II, were to have constantly viewed the camera monitors for the camera footage in order to ensure the safety of the pretrial detainees. Had they done so, they would have seen the broom covering the camera and responded to the module.

27. John Doe I and John Doe II, either recklessly or intentionally, failed to view the camera monitors to see that a broom was covering the camera lens and, in so doing, were not alerted to the fact that there was a possible assault and battery on Plaintiff.

28. Alternatively, John Doe I and John Doe II viewed the camera footage, saw the broom being used to cover the camera lens, and intentionally failed to respond to the module to prevent the assault and battery on Plaintiff.

29. Because the camera lens was covered with a broom, the other pretrial detainees believed they could assault and batter Plaintiff without fear of punishment.

30. Prior to April 19, 2016, Plaintiff had been assigned to a unit on the third floor of the JCDC. Plaintiff had refused to "pay rent" to another inmate who went by "Wax". On or about April 19, 2016, "Wax" had been assigned to J4H module which was right across from J4A module where Plaintiff was housed. "Wax" used hand signals to convey to pretrial detainees in J4A module that Plaintiff was a "snitch." These hand signals prompted the assault set forth herein.

31. On April 20, 2016, Plaintiff was taken to the medical unit at 10:30 a.m.. He was noted to have a pain rating of 8 out of 10 after 5-6 other pretrial detainees jumped him on April 19, 2016. He showed abrasions to his upper back and a closed wound on his left eyelid. He was given ibuprofen 800 mg twice a day as needed, for three days. He was told to contact medical if his symptoms did not improve in three days.

32. Plaintiff was then assigned to Unit 7A module.

5

Case 4:17-cv-00506-BP    Document 1    Filed 06/20/17    Page 5 of 13

33. On April 23, 2016, Plaintiff reported to the medical unit because he was advised to return if his symptoms did not improve. He stated that he still had pain in his body, head, and hand following his assault. Medical personnel extended his ibuprofen order for seven days, but advised that additional Tylenol and ibuprofen may be purchased through commissary.

34. Plaintiff suffered emotional, physical, and mental distress as a result of Defendants' acts and omissions.

## COUNT I

*42 U.S.C. § 1983 - Fourteenth Amendment Due Process*
*Against Defendants John Doe I and John Doe II*

35. Plaintiff incorporates herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

36. By allowing brooms to be left in housing units, John Doe I and John Doe II, knowingly allowed them to be used as weapons and/or objects to cover the lenses of the monitoring cameras.

37. Allowing the brooms to be used to cover the lenses of the monitoring camera encourages prisoners to commit acts of violence, such as those committed on Plaintiff, without fear of punishment.

38. Further, John Doe I's and John Doe II's intentional and reckless failure to monitor the screens that monitored the housing unit where Plaintiff was housed and, therefore, to notice that a broom was covering the camera led to their not coming to Plaintiff's rescue to prevent further beatings.

39. By allowing brooms to be in the housing module and their use as objects to cover the camera lenses, John Doe I and John Doe II intentionally punished Plaintiff.

40. There was no legitimate reason to allow brooms to stay in the housing units when

6

corrections officers were not present.

42. The actions and inactions of John Doe I and John Doe II deprived Plaintiff of his constitutional rights afforded him under the Fourteenth Amendment of the United States Constitution.

41. The constitutional deprivations were objectively serious in that the actions and inactions of John Doe I and John Doe II were subjectively and objectively unreasonable from perspective of any reasonable guard or corrections officer who would have been on the scene.

42. The actions and inactions of John Doe I and John Doe II amounted to the deliberate indifference to Plaintiff's constitutional rights in that they were intentional and/or reckless.

43. The actions and inactions of John Doe I and John Doe II resulted in the denial of the minimal civilized measure of life's necessities.

44. The actions and inactions of John Doe I and John Doe II deprived Plaintiff of life, liberty or property without due process of law – both subjectively and objectively.

45. By their actions and inactions, Defendants John Doe I and John Doe II intentionally and/or recklessly injured Plaintiff without just cause.

46. Plaintiff suffered damages, including physical and emotional injury, as a result of John Doe I and John Doe II's actions and inactions.

WHEREFORE, Plaintiff prays this Court:

    A. Enter judgment in favor of Plaintiff and against Defendants John Doe I and John Doe II;

    B. Award Plaintiff compensatory and punitive damages against Defendants John Doe I and John Doe II for violation of Plaintiff's constitutional rights under color of state law;

7

C. Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

D. Allow such other and further relief as the Court deems just and proper.

## COUNT II

*42 U.S.C. § 1983 - Eighth Amendment*
*Cruel and Unusual Punishment*
*Against Defendants John Doe I and John Doe II*

47. Plaintiff incorporates herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

48. By allowing brooms to be left in housing units, John Doe I and John Doe II, knowingly allowed them to be used as weapons and/or objects to cover the lenses of the monitoring cameras.

49. Allowing the brooms to be used to cover the lenses of the monitoring camera encourages prisoners to commit acts of violence, such as those committed on Plaintiff, without fear of punishment.

50. Further, John Doe I's and John Doe II's intentional and reckless failure to monitor the screens that monitored the housing unit where Plaintiff was housed and, therefore, to notice that a broom was covering the camera led to their not coming to Plaintiff's rescue to prevent further beatings.

51. By allowing brooms to be in the housing module and their use as objects to cover the camera lenses, John Doe I and John Doe II intentionally punished Plaintiff.

52. There was no legitimate reason to allow brooms to stay in the housing units when corrections officers were not present.

53. The actions and inactions of John Doe I and John Doe II deprived Plaintiff of his constitutional rights afforded him under the Eighth Amendment of the United States

8

Constitution.

54. The constitutional deprivations were objectively serious in that the actions and inactions of John Doe I and John Doe II were subjectively and objectively unreasonable from perspective of any reasonable guard or corrections officer who would have been on the scene.

55. The actions and inactions of John Doe I and John Doe II amounted to the deliberate indifference to Plaintiff's constitutional rights in that they were intentional and/or reckless.

56. The actions and inactions of John Doe I and John Doe II resulted in the denial of the minimal civilized measure of life's necessities.

57. The actions and inactions of John Doe I and John Doe II constituted cruel and unusual punishment in violation of Plaintiff's rights under the Eighth Amendment to the United States Constitution.

58. By their actions and inactions, Defendants John Doe I and John Doe II intentionally and/or recklessly injured Plaintiff without just cause.

59. Plaintiff suffered damages, including physical and emotional injury, as a result of John Doe I and John Doe II's actions and inactions.

WHEREFORE, Plaintiff prays this Court:

   A. Enter judgment in favor of Plaintiff and against Defendants John Doe I and John Doe II;

   B. Award Plaintiff compensatory and punitive damages against Defendants John Doe I and John Doe II for violation of Plaintiff's constitutional rights under color of state law;

   C. Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law; and

D. Allow such other and further relief as the Court deems just and proper.

## COUNT III

*42 U.S.C. § 1983 - Failure to Supervise and Train*
*Against Defendant Jackson County, Missouri*

60. Plaintiff incorporates herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

61. Defendant Jackson County developed and maintained policies and customs exhibiting deliberate indifference to Plaintiff's constitutional rights, including the allowing of brooms in housing modules when corrections officers are not present.

62. At the time of the above-described incidents, it was the custom or policy of Defendant Jackson County to inadequately supervise and train its correctional officers with respect to the care of pretrial detainees thought to be "snitches" and the constant monitoring of camera monitors and to be on the lookout for obstructions to the camera lenses, thereby failing to prevent the constitutional violations against Plaintiff.

63. Defendant Jackson County's customs and policies demonstrate deliberate indifference to the constitutional rights of pretrial detainees such as Plaintiff within JCDC and caused the violation of Plaintiff's rights alleged herein.

64. As a direct and proximate result of Defendant Jackson County's customs and policies, Plaintiff sustained damages.

WHEREFORE, Plaintiff prays this Court:

A. Enter judgment in favor of Plaintiff and against Defendant Jackson County;

B. Issue an injunction requiring Defendant Jackson County to develop and implement adequate training programs for its correctional officers about individual rights under the Fourteenth and Eighth Amendments;

10

C. Award Plaintiff compensatory damages against Defendant Jackson County, Missouri for violation of Plaintiff's constitutional rights under color of state law;

D. Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C.§ 1988 and any other applicable provisions of law; and

E. Allow such other and further relief as the Court deems just and proper.

## COUNT IV

*State Law Claim - Declaratory Judgment Violation of*
*Missouri Constitution Article 1, § 21*
*Against All Defendants*

65. Plaintiff incorporates herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

66. No later than April 19, 2016, Defendant Jackson County knew that Plaintiff was at risk of being assaulted and battered by other pretrial detainees and that the custom and practice was for pretrial detainees to cover cameras with brooms to aid in the assault and battery of other pretrial detainees.

67. Defendants John Doe I and John Doe II knew there was a substantial risk that Plaintiff would be assaulted and battered by other pretrial detainees and that brooms were used to obstruct cameras monitoring the housing modules, and that when that occurred pretrial detainees were being assaulted and battered.

68. Despite this knowledge, John Doe I and John Doe II intentionally and recklessly failed to ensure there were no brooms in the modules and/or to intervene and prevent the assault and battery on Plaintiff.

69. By their acts and omissions, Defendants intentionally injured Plaintiff without just cause.

68. The acts and omissions of Defendants John Doe I and John Doe II with respect to Plaintiff constitute cruel and unusual punishment prohibited by Article 1, § 21 of the Missouri Constitution.

69. Plaintiff suffered damages, including physical and emotion injury, as a result of Defendant's acts and omissions.

WHEREFORE, Plaintiff prays this Court:

A. Enter judgment in favor of Plaintiff and against all Defendants;

B. Enter a declaration pursuant to Missouri Revised Statutes § 527.010 that all Defendants violated Article 1, § 21 of the Missouri Constitution;

C. Issue an injunction requiring Defendant Jackson County to develop and implement adequate training programs for its correctional officers about individual rights under Article 1, § 21 of the Missouri Constitution;

D. Award Plaintiff reasonable attorneys' fees and costs; and

E. Allow such other and further relief as the Court deems just and proper.

## COUNT V

*State Law Claim - Intentional Infliction of Emotional Distress*
*Against All Defendants*

70. Plaintiff incorporates herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

71. John Doe I and John Doe II's actions constitute extreme and outrageous conduct that caused both extreme emotional distress and bodily harm to Plaintiff. Doe Defendants' actions were done intentionally or recklessly to harm Plaintiff.

72. John Doe I and John Doe II's actions were so outrageous in character and extreme in degree as to go beyond all possible bounds of decency.

73. John Doe I and John Doe II's extreme and outrageous behavior caused Plaintiff to suffer physical injury, as well as severe and extreme emotional distress.

WHEREFORE, Plaintiff prays this Court:

A. Enter judgment in favor of Plaintiff and against John Doe I and John Doe II;

B. Award Plaintiff compensatory damages against John Doe I and John Doe II.

C. Award Plaintiff punitive damages against John Doe I and John Doe II; and

D. Allow such other and further relief as the Court deems just and proper.

Respectfully submitted,

**SMITH LAWRENCE.**

By:/s/ David R. Smith
David R. Smith, MO 39088
One Park Place
700 W. 31st Street, Suite 408
Kansas City, MO 64108
(816) 753-9393
(816) 778-0957 FAX
david@smithlawrence.com
ATTORNEY FOR DEFENDANT